UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**KATHLEEN M. WOOD-CALLIPARI,**

                         **Plaintiff,**

          **-v-**                                **5:15-CV-743**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Howard D. Olinsky, Esq.
Olinsky Law Group
300 State Street
Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

David L. Brown, Esq.
Lorie E. Lupkin, Esq.
Daniel R. Janes, Esq.
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

# MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

On February 17, 2012, plaintiff protectively filed an application for disability insurance benefits, alleging an onset date of August 9, 2011, due to bipolar disorder, bilateral shoulder pain, as well as bulging and herniated disks in the back and neck. The application was initially denied on April 12, 2012. Thereafter, plaintiff filed a request for a hearing, and hearings were held on

September 3, 2013 and December 19, 2013. At the second hearing, plaintiff's attorney noted that plaintiff had recently been diagnosed with fibromyalgia. (Tr. 70). On February 7, 2014, ALJ Elizabeth W. Koennecke issued a decision denying plaintiff's claim for benefits. (Tr. 21-33). The Appeals Council denied plaintiff's request for review. Plaintiff brought an action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits.

Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 19). For the reasons set forth below, the court concludes that the Commissioner's decision should be reversed and the matter remanded for further proceedings.

## DISCUSSION

**A.     Legal Standard**

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

First the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 24). The ALJ then concluded that plaintiff's right shoulder impingement with status post repair, chronic lumbar and cervical strain, and mental impairment were "severe impairments." (Tr. 24-25). The ALJ concluded that "the record does not contain the requisite diagnostic clinical findings to establish fibromyalgia as a medically determinable impairment." (Tr. 25). Specifically addressing Listings 1.02 and 1.04, the ALJ determined that plaintiff's physical impairments did not meet the requirements of the listings. The ALJ then discussed Listings 12.03 and 12.06 and found that plaintiff's mental impairments also did not meet the requirements of the listings.

Next, the ALJ discussed the evidence and found that plaintiff had "the residual functional capacity to lift, carry, push, and/or pull ten pounds occasionally and less than ten pounds frequently, perform no overhead work on the right side, and needs a sit/stand option occasionally but has no limit for total hours of sitting or standing overall." The ALJ further concluded that

plaintiff "retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain schedule, relate to and interact with others to the extent necessary to carry out simple tasks, and handle simple work-related stress in that she is able to make decisions directly related to the performance of simple tasks in a stable, unchanging work environment." (Tr. 27).

The ALJ concluded that the opinion of Dr. Alvarez, an independent medical examiner, that plaintiff could hold/lift/push/pull 20 pounds occasionally, and was restricted from repetitive and sustained bending/lifting/twisting motions of the neck and lower back should be given "great weight" because it was "based on thorough physical examination[] and a review of [plaintiff's] medical records." (Tr. 28). For the same reasons, the ALJ allocated "great weight" to a March 2012 opinion of Dr. Rehmatullah, an independent medical examiner, that plaintiff should avoid work activity that entailed pushing, pulling, or overhead use of the right arm, and lifting over ten pounds, and that she required the ability to sit and stand at her own volition. (Tr. 28). Four months later, Dr. Rehmatulah stated that plaintiff should continue to avoid overhead work activity with her right arm, lifting, pushing, or pulling more than ten pounds, repetitive bending or twisting from the waist, and repetitive bending, twisting, or turning of the head. The ALJ assigned "some weight to the limitations" associated with plaintiff's right shoulder impingement, but only "limited weight" to the limitations associated with her cervical and lumbosacral syndrom finding that they were "based significantly on her reported complaints, and are not fully substantiated by [Dr. Rehmatullah's] physical examination." (Tr. 28-29).

The ALJ assigned limited weight to the opinion of plaintiff's treating chiropractor, who

-4-

indicated that plaintiff was limited to less than sedentary work activity, because "he is not considered an acceptable medical source" and "his assessment was based significantly on the claimant's subjective complaints, as opposed to objective clinical findings," and was "contradicted by the objective evidence in record." (Tr. 28). Consultative examiner Dr. Lorenson's opinion that plaintiff had moderate restrictions for reaching, pushing, and pulling with the right arm and mild restrictions for bending and climbing stairs was given "some weight" based on his programmatic expertise. (Tr. 28). The ALJ allocated "great weight" to state agency medical consultant Dr. Backland based on his programmatic expertise, but found that plaintiff had greater limitations for lifting and carrying than he identified. Finally, the ALJ assigned "some weight" to the opinion of Dr. Ferraraccio, an independent medical examiner, who limited plaintiff to less than light duty, but noted that the opinion was given only a little over a month after plaintiff's right shoulder surgery.

The ALJ explained that the "objective evidence in record" supports the conclusion that plaintiff was capable of sedentary work activity. In this regard, the ALJ pointed to the fact that in December 2010 plaintiff "was only advised to undergo physical therapy, which is not particularly indicative of disabling pain;" a September 2011 EMG and nerve conduction study showed no findings suggestive of radiculopathy, plexopathy, or neuropathy;" "postoperative diagnostic images of her right shoulder showed adequate decompression and was otherwise unremarkable;" that although plaintiff had decreased range of motion in the cervical and lumbar spine, right shoulder and hips, she was in no acute distress, gait was normal, straight leg raise test was negative, joints were stable and nontender, deep tendon reflexes were physiologic and equal in the extremities, no sensory deficits were present, strength was full in the extremities, no edema or muscle atrophy was evident, hand and finger dexterity was intact, and grip strength was full

bilaterally." (Tr. 29-30). Similarly, the ALJ stated that a June 2013 MRI showed no significant changes compared to earlier studies, suggesting "that her neck and back pain has remained relatively stable." (Tr. 30).

The ALJ also discussed plaintiff's daily activities, concluding that she "maintains a broad range of daily activities that is consistent with sedentary, simple work activity." (Tr. 31). To support this conclusion, the ALJ pointed to March 2012 counseling records that plaintiff was "cutting hair and doing multiple loads of laundry;" that in April 2012 she traveled to Erie, Pennsylvania to visit a water park; that she reported at a consultative examination that she "remained able to attend to her personal needs without difficulties, cook, clean, do laundry, go shopping, engage in leisure activities, garden, do home repairs, and socialize with friends;" and that counseling records indicate that she was "gardening, going to restaurants and stores, cleaning, reading, remodeling the cottage, going to tattoo parlors, caring for her elderly father, redecorating an apartment, building garden boxes, dusting and vacuuming." (Tr. 31). Ultimately, the ALJ concluded that plaintiff's allegation that she is unable to engage in any work activity is contradicted by the limited abnormal clinical findings identified, and her broad range of daily activities and found that her subjective complaints are only partially credible.

The ALJ then found that plaintiff was unable to perform her past relevant work, but, after consulting a vocational expert, found that she could perform occupations such as: election clerk, call out operator, or bonder semiconductor, and therefore, a finding of not disabled was appropriate. (Tr. 32-33).

### C. Issues In Contention

Plaintiff argues that: (1) the ALJ erred by failing to find plaintiff's fibromyalgia to be a

medically determinable impairment; (2) the RFC determination is not supported by substantial evidence; (3) the credibility determination is not supported by substantial evidence; and (4) the Step 5 determination is not supported by substantial evidence.

**1.      Fibromyalgia**

The Court concludes that the ALJ misconstrued the applicable legal standard when finding that plaintiff's fibromyalgia was not a severe impairment. "Mindful that the existence of a severe impairment serves only as a threshold to be met for the purpose of screening out de minimis claims," the ALJ's conclusion that the plaintiff's fibromyalgia was not a severe impairment was not supported by substantial evidence. *Isaacs v. Astrue*, 07-CV-257, 2009 WL 528252, at *8 (W.D.N.Y. Mar. 2, 2009).

Fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869. SSR 12-2p provides guidance on how ALJ's should evaluate whether fibromyalgia is a medically determinable impairment and how to evaluate its limiting effects. The ruling recognizes two sets of criteria for diagnosing fibromyalgia. Necessary for both are: (1) findings of widespread pain, "that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)–that has persisted (or that persisted) for at least three months," and (2) evidence that other disorders that could cause the symptoms and signs had been excluded. SSR 12-2p, 2012 WL 3104869, at *2-3. The second set of criteria[1] also requires "repeated

---

[1] The first set of criteria, requires finding "at least 11 [out of 18 designated] positive tender points on physical examination," which must be found bilaterally and both above and below the waist.

manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id.* Ruling 12-2p also recognizes that diagnosis of fibromyalgia is generally reached by a process of exclusion; eliminating other medical conditions which might manifest similar symptoms of musculoskeletal pain, stiffness and fatigue.

While it is true that a mere diagnosis of fibromyalgia does not mandate a finding of disability, *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008), an ALJ cannot deny a fibromyalgia claimant's claim of disability based on a perceived lack of objective evidence. Here the ALJ appears to have improperly substituted her own criteria as to what is necessary to establish fibromyalgia as a medically determinable impairment. The ALJ focused on a lack of objective evidence and stated that "the record does not contain the requisite diagnostic clinical findings to establish fibromyalgia as a medically determinable impairment." Tr. 25. However, fibromyalgia is a disease that eludes objective measurement. "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have *normal physical examinations, e.g.,* full range of motion, no joint swelling, normal muscle strength and *normal neurological reactions*." *Campbell v. Colvin*, No. 5:13-CV-451, 2015 WL 73763, at *5 (N.D.N.Y. Nov. 17, 2014) (emphasis in original) (*Report-Recommendation* adopted January 6, 2015). All along, plaintiff complained of these symptoms. The record is replete with references to plaintiff's pain. It also contains references to other symptoms, signs or co-occurring conditions as described in SSR 12-2p, and it is unclear from the decision whether the ALJ reviewed these and concluded that plaintiff did not meet the criteria of

-8-

12-2p. Instead, it appears the ALJ continued to rely on the normal test results and lack of objective findings. The Court concludes that this was error. Indeed, as noted above, the lack of objective clinical findings may serve to confirm a diagnosis of fibromyalgia.

Although frequently when there are multiple impairments, and the ALJ finds some, but not all severe, an error in the severity analysis at Step 2 may be harmless. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citation omitted). However, in light of the ALJ's focus throughout her decision on the lack of objective evidence, the Court finds remand appropriate to give the ALJ an opportunity to revisit the severity determination.

### 2. RFC Determination

In light of the errors in the severity determination, the Court concludes that the RFC determination must also be revisited on remand.

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded

-9-

controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

As described in detail above, the ALJ's conclusions regarding the weight given to each of the providers appears to be largely based on whether there were objective findings to support the providers' opinions and plaintiff's subjective complaints. If on remand, the ALJ determines that fibromyalgia is a medically determinable impairment, her reliance on the lack of objective medical evidence would be error. *See, e.g., Campbell*, at *19 ("[D]iscrediting treating source medical opinions and subjective testimony concerning limiting effects of fibromyalgia simply because such evidence is not corroborated by objective medical evidence" is reversible error.). Due to the nature of fibromyalgia, a plaintiff's reports of complaints and histories are essential diagnostic tools. Therefore, the ALJ should revisit the RFC determination on remand.

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. See 20 C.F.R. § 404.1529; see also *Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id*. § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors

-11-

concerning claimant's functional limitations and restrictions due to symptoms. Id. § 404.1529(c)(3). If the ALJ finds that plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008).

With respect to the ALJ's reliance on plaintiff's daily activities to demonstrate that her allegations of disabling limitations are not fully credible, the Court concludes that the ALJ appears to have selectively relied on only the comments in the record that supported her conclusion. For example, although the ALJ stated that counseling records indicate that plaintiff was participating in a broad range of daily activities, these same records also demonstrate that plaintiff is unable to do many activities. *See, e.g.,* Tr. 523 ("Kathy having limitations due to physical constraints."); 526 ("Intense pain moving one box"); 533 ("Dusting and vacuuming - couldn't straighten back, pain for 3 days"); 537 ("Sat on floor the other day to put groceries away and could not get back up - shooting pain in legs and hips"); 538 ("Can't cross legs, too much pain"). Her counselor also consistently documented that plaintiff complained of pain during her sessions. *See, e.g.,* Tr. 501, 502, 512, 516 (noting that she plaintiff was "in tremendous pain today and fed up"); 520 ("Body hurting - left side of neck, both shoulders, can't turn head"); 527 ("In a lot of pain - needed her meds in the last week"); 534 ("In constant pain."); 541 ("Depressed, in pain often . . . Not sleeping well (two hours a night)").

Moreover, in fibromyalgia cases, "the credibility of the claimant's testimony regarding her symptoms takes on 'substantially increased' significance in the ALJ's evaluation of the evidence." *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (citation omitted). Therefore, if, on

-12-

remand, the ALJ concludes that fibromyalgia should be considered a severe impairment, the credibility determination should also be revisited.

### 4. Step 5 Determination

Once the plaintiff shows that she cannot return to her previous work, the Commissioner bears the burden of establishing that she retains the RFC to perform alternative substantial gainful work in the national economy. *Butts v. Barnhart*, 388 F.3d 377, 383) (2d Cir. 2004). In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subt. P, App. 2. Each category has its own Grid which takes into account the claimant's age, education, and work experience. Based on these factors, the Grids indicate whether the plaintiff can engage in any other substantial gainful work which exists in the national economy.

Generally, the result listed in the Grid is dispositive on the issue of disability. However, an ALJ may not rely solely on the Grids when non-exertional limitations "significantly diminish" plaintiff's ability to work so that the Grids do not fully address plaintiff's limitations. *See, e.g.*, *Vargas v. Astrue*, 10 Civ. 6306, 2011 WL 2946371, at *13 (S.D.N.Y. July 20, 2011). Consequently, where the nonexertional limitations "significantly limit" the range of work permitted by the exertional limitations, or when exertional impairments do not fit squarely within grid categories, the ALJ is required to consult with a vocational expert. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairments has any more than

-13-

a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."). The ALJ's determination of whether the impact of the nonexertional limitations "significantly limits" the range of work must be supported by substantial evidence. *See Bapp*, 802 F.2d at 605.

Here the ALJ appropriately requested testimony from a vocational expert, however, in light of the errors discussed above, on remand, the ALJ should also revisit the Step 5 determination.

## CONCLUSION

Here, ALJ Koennecke's determinations appear to largely be based on a perceived lack of objective evidence. In light of plaintiff's fibromyalgia diagnosis and the nature of the disease, the Court concludes that this was error. On remand, the ALJ should revisit the findings discussed above.

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is DENIED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is GRANTED; and it is further

ORDERED that the matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Date:   June 29, 2016

Norman A. Mordue
Senior U.S. District Judge

-14-